856 F.2d 192
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Aaron Clinton ATKINS, Petitioner,
v.
Dale FOLTZ, Respondent.
 No. 87-1341.
 United States Court of Appeals, Sixth Circuit.
 Aug. 24, 1988.
 
 Before NATHANIEL R. JONES, MILBURN and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 On January 19, 1979, a warrant was issued charging Atkins with first degree murder. Following lengthy pretrial deliberations, including the granting of petitioner's initial petition for a writ of habeas corpus, which resulted in his release, and, eleven months later, the reversal of that decision by this court and Atkins's consequent reincarceration, Atkins's trial began on August 14, 1981. Atkins was convicted and now challenges numerous aspects of his trial, including: 1) alleged juror bias; 2) absence of a critical res gestae witness; 3) admission of testimony relating to his prior unproven bad acts; 4) the trial judge's ruling on the admissibility of his prior convictions; and 5) an alleged violation of his right to a speedy trial.
 
 
 2
 After Atkins filed this petition for a writ of habeas corpus, the trial court dismissed the petition, finding that Atkins had failed to make timely objections to the first four alleged errors and could not excuse those failures under the "cause and prejudice" test, and finding that Atkins had not been deprived of his speedy trial right.
 
 
 3
 We agree with the district court that Atkins's failures to object, and his inability to show resulting prejudice, require a dismissal of his petition on the first four grounds. We further agree that Atkins's right to a speedy trial has not been violated. Thus, we affirm.
 
 
 4
 * Atkins's trial began on August 14, 1981. The key witness was Ronald "Moon" Moore, who testified that he had worked for Atkins, and that the two of them had taken contracts for killings, and had sold drugs. Moore, Atkins's alleged accomplice in the murder, had decided to cooperate with the police in exchange for the government dropping the charges against him and placing him in the witness protection program.
 
 
 5
 Moore testified that a Mr. Wiggins had worked for Atkins in 1974. Moore told the trial court that he and Wiggins, under Atkins's direction, had assisted Atkins in killing Mr. G.E. Tolbert by injecting him with a lethal dose of heroin and holding his head under water for at least eight minutes. Dr. Bass, a pathologist, and Dr. Monforte, a toxicologist, corroborated Moore's version of events by verifying the cause of death. However, Monforte testified from the notes of Dr. Moy, who was the toxicologist who actually performed the tests. Other witnesses included a woman, D. Wilder, who testified that she and Moore went to a party on the night of the alleged crime, as well as the person who gave this party.
 
 II
 
 6
 There are two general rules which apply to federal habeas proceedings, and which apply to a number of petitioner's claims in this case. First, a federal court cannot issue a writ of habeas corpus for violations of state law only. Engel v. Isaac, 456 U.S. 107, 119 (1982); United States ex rel. Hoover v. Franzen, 669 F.2d 433, 436 (7th Cir.1982).
 
 
 7
 Second, when a petitioner claims error on habeas but failed to object to these errors at trial, the "cause and prejudice" test is used by the court to determine whether the petitioner should be excused for his failure to timely object. "Cause" has been defined as a substantial reason to excuse the petitioner's procedural failure. Maupin v. Smith, 785 F.2d 135, 138-39 (6th Cir.1986). Attorney error is not "cause" unless the error rises to the level of ineffective assistance of counsel. Ibid. For example, failure to object to jury instructions, impeach a witness or file motions is not ineffective assistance, and, thus, is not "cause." Wilson v. McMacken, 786 F.2d 216 (6th Cir.1986); Lockett v. Arn, 740 F.2d 407 (6th Cir.1984), cert. denied, 106 S.Ct. 3332 (1986). To meet the second part of the test, the petitioner must show that actual prejudice resulted from the error. United States v. Frady, 456 U.S. 152, 170 (1982).
 
 
 8
 We examine the petitioner's contentions in order.
 
 
 9
 * In the midst of Dr. Monforte's testimony, the judge called a recess and, in open court, told juror number four that she had a message to call Judge Jobes, the magistrate who had presided over Atkins's preliminary examination, and who had remanded him into custody and cancelled his bond. There is no record of the contents of the conversation, if any took place, between the juror and Judge Jobes.
 
 
 10
 Atkins failed to object to this contact, which he was required to do under Michigan law in order to preserve his claim of error. People v. Cuellar, 310 N.W.2d 12 (Mich.Ct.App.1981); People v. Wells, 303 N.W.2d 226 (Mich.Ct.App.1981). Thus, Atkins must satisfy the "cause and prejudice" test to excuse this failure. The trial court found that sufficient prejudice to excuse Atkins's failure was not present here. We agree.
 
 
 11
 Atkins cites Remmer v. United States, 347 U.S. 227, 229 (1954), for the proposition that any contact between a juror and a third party is presumptively prejudicial. However, he fails to note that the Court applies this rule only when the contact relates to "the matter pending before the jury...." Ibid. In other words, prejudice is presumed only when the contents of the contact is known to have been related to the case before the jury.
 
 
 12
 Here, Atkins is unable to show prejudice. He is unable to show that a contact between the juror and Judge Jobes took place at all, nor could he show the contents of that contact if, in fact, it occurred. Without such a showing, we are not required to presume that Atkins's trial was affected in any way by this alleged contact, and we decline to do so. A contrary rule would encourage petitioners to amass errors on which to base appeals without affording state courts an opportunity to remedy them at trial.
 
 B
 
 13
 Atkins claims that the prosecution's failure to produce Dr. Moy, the chemist who performed the blood analysis on the decedent, deprived him of due process of law. He claims that only the chemist who actually performed the tests can testify to their authenticity. Thus, he claims that Dr. Moy was a critical res gestae witness, and that the prosecution was, therefore, required to produce him.
 
 
 14
 However, federal law does not require the production of all res gestae witnesses. In fact, under federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner. United States v. Bryant, 461 F.2d 912, 916 (6th Cir.1972). Atkins alleges that Moy would have exculpated him, but provides no explanation to support this assertion.
 
 
 15
 Thus, although Michigan law requires the production of all res gestae witnesses, Mich.Comp.Laws Sec. 767.40(a), this court cannot hear state claims on petition for writ of habeas corpus, Engel, 456 U.S. at 119-23, and the trial court must be affirmed.
 
 C
 
 16
 Atkins failed to object timely to the admission of his prior unproven bad acts. Thus, unless he meets the "cause and prejudice" test, he cannot raise this claim here. In addition, even if he could meet this test, federal courts will reverse a state court's ruling as to the admissibility of prior bad acts only if there is a "clear showing of prejudicial abuse of discretion." Michelson v. United States, 335 U.S. 469, 480 (1948).[1] Thus, under either rule, Atkins must show that prejudice resulted from the admission of his prior unproven bad acts.
 
 
 17
 The testimony to which Atkins objects shows that no prejudice resulted. All that was introduced was Moore's statement that he worked for Atkins performing contract killings and selling drugs. The prosecution used this testimony only to establish the relationship between Moore and Atkins. Atkins did not object, nor did he request a limiting instruction. Even if the jury had not heard this, it would have heard the rest of Moore's eyewitness testimony, as well as the testimony of the other witnesses.
 
 
 18
 In addition, as discussed above, Atkins cannot show cause for his failure to timely object because this attorney error does not rise to the level of ineffective assistance. Maupin, 785 F.2d at 138-39; Wilson, 786 F.2d 216. Thus, Atkins can show neither cause nor prejudice to excuse his failure to object. The trial court must be affirmed.
 
 D
 
 19
 Similar reasoning applies to the admissibility of prior convictions. Here, Atkins claims that the trial judge improperly delegated her judicial authority when she ruled that if Atkins used Moore's prior convictions to impeach him, then the prosecution could use Atkins's prior convictions to impeach if Atkins chose to take the stand. Atkins claims that this delegated the judge's discretion to him, and forced him to choose between his right to confront witnesses against him and his right to testify, thus burdening his exercise of both rights.
 
 
 20
 However, again, Atkins failed to object timely to this ruling at trial. Atkins cannot show cause for his failure to object because attorney error that amounts to less than ineffective assistance of counsel is not "cause." Maupin, 758 F.2d at 138-39; Wilson, 786 F.2d 216. Thus, Atkins cannot prevail on this ground.
 
 
 21
 Even if Atkins could show cause and prejudice, though, he could not prevail. The right to impeach a prosecution witness is not mandated by the federal Constitution; it is not synonymous with the right to confront. Questions relating to the admissibility of prior convictions in federal courts are governed by the federal rules of evidence, Fed.R.Evid. 404(a)(3), and, in state courts, by state rules of evidence. Mich.R.Evid. Sec. 609(a). In neither federal nor state courts do such questions involve violations of a federal constitutional right. Thus, in the instant case, this is an issue involving state law, of which a federal court may not take cognizance in the course of evaluating the merits of a habeas petition. Engel, 456 U.S. at 119. We must affirm.
 
 E
 
 22
 Finally, Atkins claims that his right to a speedy trial was violated. This claim, too, is unsupportable. Atkins filed a pre-trial petition for a writ of habeas corpus. That petition was granted by a federal district court, and Atkins was released from custody until this court reversed the granting of the writ eleven months later. Thus, Atkins was in custody for fifteen months before the earlier petition was granted, and five months between the time when he was remanded to custody and the time when his trial began.
 
 
 23
 In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set out a four-part test to determine when the right to a speedy trial has been violated. The court should weigh: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant in terms of both pre-trial incarceration and anxiety.
 
 
 24
 Atkins claims that prejudice resulted from the delay because two witnesses died before his trial commenced. One witness would have corroborated D. Wilder's testimony that she was with Moore on the day of the crime; the other, Atkins claims, would have testified that Atkins could not have been driving his car on the day of the crime because Atkins had loaned it to the witness. Neither witness was central to Atkins's case.
 
 
 25
 The district court found that there was no prejudice due to the delay. Clearly, the absence of this corroboration of testimony that was in fact heard by the jury was not prejudicial. In addition, the jury was not swayed by the testimony of D. Wilder that she was with Moore on the day of the crime; it is unlikely that they would have been swayed by testimony that someone else had Atkins's car on that day.
 
 
 26
 We have stated in the past that the length of a permissible delay increases with the seriousness and complexity of the crime. Redd v. Sowders, 809 F.2d 1266, 1269 (6th Cir.1987). Atkins' crime is both technically complex and certainly serious. Atkins will not be allowed to benefit from his own numerous pretrial motions and his earlier habeas petition by having his charges dropped because of the resultant delay.
 
 III
 
 27
 For all of the above reasons, we can find no error in the district court's dismissal of this petition. That court is hereby AFFIRMED.
 
 
 
 [1]
 Although Michelson involved a direct appeal, and not a petition for a writ of habeas corpus, it has been cited in habeas cases by the Court. Loper v. Beto, 405 U.S. 473, 488 n. 2 (1972)